ⴰORIGINAL

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

17 CV 10048

| | |
|---|---|
| Fior Alberto, Monica Magana Baltazar, Alfonso Baltazar, Nolberto Gomez, Lazaro Armas, Latecia Pachecho, Mamerto Rosales, and Martin Lopez | : |
| Individually, and on behalf of all others similarly situated as Class Representatives, | : : : |
| Plaintiffs, | : : |
| v. | : Case No.: : |
| | : CLASS AND REPRESENTATIVE : ACTION |
| Plaza Sweets, Inc., Plaza Sweets Holdings, Inc., Zephyr Management LLC, and Rodney Holder, | : : |
| | : JURY TRIAL REQUESTED |
| Defendants. | : : : : |

## COMPLAINT

## I.   PRELIMINARY STATEMENT

1.   Plaintiffs Fior Alberto, Monica Magana Baltazar, Alfonso Baltazar, Nolberto Gomez, Lazaro Armas, Latecia Pachecho, Mamerto Rosales, and Martin Lopez (collectively "the Individual Plaintiffs" or "Plaintiffs") worked grueling hours under dangerous and unsanitary conditions in Defendants' bakery business, regularly working more than forty hours per week to reach unrealistic production quotas.  The production plant where Defendants produced baked goods for public consumption lacked heat, hot water, and adequate cleaning, and employees toiled without protective gear to ensure their safety.

2.   Plaintiffs were paid nothing whatsoever for certain hours workers and, although they frequently worked more than 40 hours in a week, were never paid a premium rate for

overtime hours as required by Federal and State law.

3.   On multiple occasions, Defendants also failed to inform Plaintiffs that the group medical

insurance plan, under which Plaintiffs had been insured, had been canceled because of

Defendants' non-payment.  As a result, Plaintiffs unwittingly incurred medical bills and

personal liability for any care they sought, even as Defendants continued to fraudulently

reduce their wages through payroll deductions that were falsely attributed to health

insurance benefits.

4.   During the past six months, as Defendants have sought unsuccessfully to sell their

business, Defendants repeatedly delayed payment of Plaintiffs' wages, issuing post-dated

checks.  Then, as Defendants began to hurriedly liquidate their assets, Defendants

terminated the employment of nearly all their employees, including most of the

Individual Plaintiffs, but failed to pay the workers their accrued, unused vacation time.

5.   The Individual Plaintiffs, on their own behalf, on behalf of all others similarly situated,

and as class representatives bring this action against Defendants Plaza Sweets, Inc., Plaza

Sweets Holdings, Inc., Zephyr Management LLC, and Rodney Holder (collectively

"Defendants"), for Defendants' failure to lawfully pay Plaintiffs' wages for their work

and for Defendants' breach of fiduciary duty through theft of Plaintiffs' health insurance

premium payments.

6.   Plaintiffs allege violations of the minimum wage and overtime provisions of the federal

Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the minimum wage and

overtime provisions of New York Labor Law Article 19 § 650, *et seq.* ("NYLL"), and the

Employee Retirement Income Security Act 29 U.S.C. § 1001 *et seq.* ("ERISA").

Plaintiffs seek their earned but unpaid wages, liquidated damages pursuant to the FLSA,

liquidated damages and unpaid vacation benefits pursuant to the NYLL, and reasonable attorneys' fees, costs, and interest, as well as declaratory relief. In addition, Plaintiffs seek equitable relief including an injunction requiring Defendants to comply with their ERISA obligations, equitable restitution for medical expenses they incurred when Defendants secretly discontinued Plaintiffs' health insurance, and reimbursement for payroll deductions purportedly for health insurance premiums for insurance that Defendants failed to provide.

7. Plaintiffs bring their FLSA claims individually and on behalf of other similarly situated current and former employees of Defendants under the collective action provisions of the FLSA, 29 U.S.C. § 216(b).

8. Plaintiffs bring their NYLL and ERISA claims individually and on behalf of a class of persons pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## II.   JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, 29 U.S.C. § 216 and 28 U.S.C. §§ 1331 and 1337, as well ERISA, 29 U.S.C. § 1001 *et seq.*; 29 U.S.C. § 1132. As this action arises under Acts of Congress regulating commerce, jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

10. With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b), because the events giving rise to this claim occurred primarily within this judicial district.

## III.   THE PARTIES

12.   Plaintiff Fior Alberto is an adult individual and resident of the State of New York, Westchester County.

13.   Plaintiff Monica Magana Baltazar is an adult individual and resident of the State of New York, Westchester County.

14.   Plaintiff Alfonso Baltazar is an adult individual and resident of the State of New York, Westchester County.

15.   Plaintiff Nolberto Gomez is an adult individual and resident of the State of New York, Westchester County.

16.   Plaintiff Lazaro Armas is an adult individual and resident of the State of New York, Westchester County.

17.   Plaintiff Latecia Pachecho is an adult individual and resident of the State of New York, Westchester County.

18.   Plaintiff Mamerto Rosales is an adult individual and resident of the State of New York, Westchester County.

19.   Plaintiff Martin Lopez is an adult individual and resident of the State of New York, Westchester County.

20.   At all times relevant to this Complaint, Plaintiffs were employees of Defendants as that term is defined by

     a.   the FLSA, 29 U.S.C. § 203(e) (1), and by

     b.   the NYLL § 190.

21.   At all times relevant to this Complaint, Plaintiffs were employees engaged in commerce or the production of goods for commerce, and/or were employees in an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 203(b)(r)(1).

22.   Upon information and belief, Defendant Plaza Sweets, Inc. ("Plaza Sweets") is a domestic corporation doing business in the State of New York and Westchester County. Plaza Sweets maintains its corporate headquarters and bakery operations at 521 Waverly Avenue, Mamaroneck, New York 10543.

23.   Upon information and belief, Plaza Sweets Holdings, Inc. ("Holdings") is a Delaware corporation doing business in the State of New York.  During the time period relevant to this complaint, Holdings has maintained its corporate headquarters at 75 Livingston Street, 21st Floor, Brooklyn Heights, NY 11201.

24.   Upon information and belief, Defendant Zephyr Management LLC ("Zephyr") is a Delaware corporation doing business in the State of New York.  Zephyr maintains its corporate headquarters at 75 Livingston Street, 21st Floor, Brooklyn Heights, NY 11201.

25.   Upon information and belief, Defendant Rodney Holder is the owner and chief executive officer of Plaza Sweets, the owner and principal of Holdings, and the owner and principal of Zephyr.  Defendant Holder is a resident of the State of New York.

26.   Upon information and belief, at all times relevant to the Complaint, Defendant Holder made all relevant decisions regarding Plaintiffs' and all other employees' wages, working conditions, and employment status at Plaza Sweets, Holdings, and Zephyr.

27.   At all times relevant to the Complaint, Defendant Holder had the power to hire and fire employees, set employees' wages, retain time and/or wage records, and otherwise control

the terms and conditions of all employees' employment at Defendants Plaza Sweets,

Holdings, and Zephyr (collectively "the Bakery Entities").

28. At all times relevant to the Complaint, Defendant Holder had the power to stop any

illegal pay practices at the Bakery Entities.

29. At all times relevant to the Complaint, Defendant Holder actively managed, supervised,

and directed the business affairs and operation of the Bakery Entities, and acted directly

and indirectly in relation to the employees.

30. At all times relevant to the Complaint, Defendant Plaza Sweets was an employer of each

of the Plaintiffs as that term is defined by

    a.  the FLSA, 29 U.S.C. § 203(d) and by

    b.  NYLL § 190.

31. At all times relevant to the Complaint, Defendant Holdings was an employer of each of

the Plaintiffs as that term is defined by

    a.  the FLSA, 29 U.S.C. § 203(d) and by

    b.  NYLL § 190.

32. At all times relevant to the Complaint, Defendant Zephyr was an employer of each of the

Plaintiffs as that term is defined by

    a.  the FLSA, 29 U.S.C. § 203(d) and by

    b.  NYLL § 190.

33. At all times relevant to the Complaint, Defendant Holder was an employer of each of the

Plaintiffs as that term is defined by

    a.  the FLSA, 29 U.S.C. § 203(d) and by

    b.  NYLL § 190.

34.    Upon information and belief, Defendants grossed more than $500,000 per year in revenue for the past five calendar years and individually and collectively are an enterprise engaged in commerce.

## IV.   STATEMENT OF FACTS

35.    At all relevant times, Defendants operated a large-scale commercial bakery in Mamaroneck, NY, manufacturing a wide variety of desserts, including cakes, dessert bars, sweet breads, tortes, tarts, and cookies, and distributing them nationally and internationally.

36.    Upon information and belief, Defendants' customers included restaurants, businesses, distributors, hotels, country clubs, caterers, and specialty food stores.

37.    Defendants hired and employed Plaintiffs to perform a range of tasks, including driving delivery vehicles, baking goods, packaging goods, making cookies, finishing goods, making pastries, making bars, wrapping goods in plastic, making boxes, cleaning and washing dishes, and freezing goods.

38.    Plaintiffs routinely worked in excess of 40 hours per week, i.e. "overtime hours", and more than 10 hours in a day.

39.    Defendants failed to pay Plaintiffs anything whatsoever for certain hours worked.

40.    Defendants never paid Plaintiffs a premium rate for overtime hours, in violation of the FLSA and NYLL.

41.    On average, certain Plaintiffs worked more than 10 hours in a single day at least once weekly.

42.    Defendants never paid Plaintiffs a premium rate for the additional time for days in which Plaintiffs worked more than 10 hours in violation of the NYLL.

*Plaintiffs' Respective Job Duties, Work Schedules and Pay*

43. Plaintiff Fior Alberto worked in Defendants' business from approximately 2010 to December 8, 2017. During this time period, she performed several job duties, including cutting of cakes and dessert bars and packaging. In 2011, she regularly worked from 2 pm to 11 pm, but during the holiday season would often work until 12 am or later, Monday through Friday. Beginning in 2014, she regularly worked from 5 am to 2 pm and in 2016 she began working a second daily shift from 5 pm to 11 pm. In 2011, her salary was $7.25 per hour and increased incrementally to $11 per hour. She was regularly paid for fewer hours than she actually worked each week, often noting that her pay stubs reflected 2 or 3 hours less than her hours worked. She was never paid a premium rate for overtime hours.

44. Plaintiff Monica Magana Baltazar worked in Defendants' business from approximately June 6, 1991 to December 8, 2017. During this time period, she primarily performed finishing of baked goods. Since 2011, she regularly worked from 4:30 am to 1:30 pm but often worked as late as 3pm, Monday through Friday, and often worked on Saturday and Sunday, especially during the winter season. In 2011, her salary was $14 per hour and increased incrementally to $17.25 per hour. During the relevant time period, she was never paid a premium rate for overtime hours.

45. Plaintiff Alfonso Baltazar worked in Defendants' business from approximately 2004 to December 8, 2017. During this time period, he primarily performed plastic wrapping of baked goods. Since 2011, he regularly worked from 4:30 am to 1:30 pm but often worked as late as 3pm, Monday through Friday, and often worked on Saturday and Sunday, especially during the winter season. In 2011, his salary was $8.28 per hour and

increased incrementally to $10 per hour. During the relevant time period, he was never paid a premium rate for overtime hours.

46.  Plaintiff Nolberto Gomez worked in Defendants' business from approximately 1999 to December 5, 2017. During this time period, he primarily performed dessert bar and tart making. In 2011, he regularly worked from 6:30 am to 3 pm, Monday through Friday and, especially during the winter season, would also frequently work on Saturdays and Sundays. Beginning in 2013, he regularly worked from 6 am to 3 pm. Since 2011, his salary was $10.93. He was regularly directed to work an additional half hour to one full hour beyond the above referenced shift end times but was never compensated for this labor. During the relevant time period, he was never paid a premium rate for overtime hours.

47.  Plaintiff Lazaro Armas worked in Defendants' business from approximately 2010 to December 5, 2017. During this time period, he primarily performed dessert bar and tart making. In 2011, he regularly worked from 6:30 am to 3 pm, Monday through Friday and, especially during the winter season, would also frequently work on Saturdays and Sundays. Beginning in 2013, he regularly worked from 6 am to 3 pm. In 2011, his salary was $8 and increased incrementally to $10 per hour. He was regularly directed to work an additional half hour to one full hour beyond the above referenced shift end times but was never compensated for this labor. During the relevant time period, he was never paid a premium rate for overtime hours.

48.  Plaintiff Latecia Pachecho worked in Defendants' business from approximately 1992 to December 8, 2017. During this time period, she performed several job duties, including pastry making and cookie making. Since 2011, her schedule varied but she generally

worked 40 hours each week over the course of four days. She frequently worked as many as 13 hours in a single work day. In 2011, her salary was $11 per hour and increased incrementally to $12 per hour. She was regularly paid for fewer hours than she actually worked each week, often noting that her pay stubs reflected 2 or 3 hours less than her hours worked. During the relevant time period, she was never paid a premium rate for overtime hours.

49.   Plaintiff Mamerto Rosales worked in Defendants' business from approximately 2002 to December 11, 2017. During this time period, he primarily performed baking duties. Since 2011, he regularly worked from 3 pm to 10 pm, Monday through Friday. In 2011, his salary was $9.50 per hour and increased incrementally to $13 per hour. During the relevant time period, he was never paid a premium rate for overtime hours.

50.   Plaintiff Martin Lopez worked in Defendants' business from approximately 1994 to December 5, 2017. During this time period, he primarily performed job duties related to the operation of Defendants' ovens. In 2011, he regularly worked from 7 am to 4 pm, Monday through Friday and, beginning in 2013, would frequently work until as late as 5pm. In 2011, his salary was $10.75 and increased incrementally to $11.75 per hour. He was regularly directed to work more than 40 hours per week but was paid nothing whatsoever for each hour over 40 in the work week. During the relevant time period, he was never paid a premium rate for overtime hours.

***Fraudulent Deduction of Plaintiffs' Health Insurance Premiums***

51.   Defendants maintained a written policy of providing employer-sponsored health insurance to their employees working 30 hours per week or more, after a two month waiting period.

52.  Pursuant to the above referenced policy, Defendants were obligated to contribute forty per cent of each covered employee's premium and the remainder was to be deducted from the covered employee's paychecks.

53.  Upon information and belief, Defendants repeatedly failed to make required payments towards Plaintiffs' employer-sponsored health insurance, resulting in cancellation of Plaintiffs' insurance coverage.

54.  Defendants' employees, including certain of the Individual Plaintiffs, unwittingly bills for medical care they sought, even as Defendants continued to fraudulently reduce their wages through payroll deductions that were falsely attributed to the payment of health insurance premiums.

55.  In 2016, Plaintiff Flor Alberto incurred more than $4,000 in medical expenses related to a corneal transplant procedure which she believed would be covered by group medical insurance, the premiums for which Defendants were purportedly taking payroll deductions from her wages to pay.  In fact, Defendants had failed to inform Ms. Alberto that the insurance plan had been canceled, and she incurred medical bills.

56.  Plaintiffs Fior Alberto, Alfonso Baltazar, and Monica Magana Baltazar each experienced regular payroll deductions identified as health insurance premium payments while Defendants failed to make the required contributions to Plaintiffs' group health insurance plan.

57.  Upon information and belief, many of Defendants' other employees experienced the same simultaneous loss of health insurance and fraudulent deductions.

***Delayed Payment of Wages and Failure to Pay Accrued Vacation Pay***

58.  Upon information and belief, during the past 18 months, Defendants have sought to sell

their bakery business and/or its assets and to avoid payment of outstanding debts.

59.   Beginning around September 2017, Defendants failed to timely pay Plaintiffs for their labor, delaying issuance of weekly pay checks until Plaintiffs repeatedly insisted on payment. Moreover, the checks issued by Defendants were apparently post-dated or otherwise marked such that they were not immediately accepted for deposit by Plaintiffs' banks.

60.   During the past six months, as Defendants continued to pursue sale and/or liquidation of their bakery business, Defendants terminated most of their employees, including all the Individual Plaintiffs.

61.   Defendants had maintained a paid leave policy which allowed their employees to accrue a certain amount of vacation each year, increasing from one week after the first year of employment to a maximum of four weeks after ten years of employment.

62.   Upon termination of Plaintiffs' employment, Defendants failed to pay certain of the Plaintiffs for all of their accrued, unused vacation time.

63.   Plaintiff Latecia Pacheco was not paid for two days of accrued vacation time.

64.   Plaintiff Fior Alberto was not paid for one week of accrued vacation time.

65.   Plaintiff Mamerto Rosales was not paid for 64 hours of accrued vacation time.

66.   Plaintiff Martin Lopez was not paid for three days of accrued vacation time.

67.   Plaintiff Lazaro Armas was not paid for one week of accrued vacation time.

68.   Plaintiffs did not receive at the time of hiring or any subsequent time a wage notice in English or Spanish, the Plaintiffs' primary language, containing the information outlined in NYLL § 195(a)(1) such as the rate of pay.

69.   Plaintiffs did not receive accurate weekly wage stubs or statements containing all

information required by NYLL § 195(3) such as dates of work, rate of pay for regular and overtime hours, and number of regular and overtime hours worked. Defendants were aware or should have been aware that applicable law required them to pay employees such as Plaintiffs premium pay for all hours worked in excess of forty (40) per week.

70.   Upon information and belief, during the period of Plaintiffs' employment by Defendants, at all times at least 20, and up to 100, other individuals were also employed by Defendants in similar capacities and were subject to the same nonpayment of lawful wages in violation of Federal and State law. The duration of employment for each individual varied. Plaintiffs estimate that in total at least 125 individuals were employed by Defendants in similar capacities at the same job sites and subject to the same pay policies during the past three years.

## V.   COLLECTIVE AND CLASS ACTION ALLEGATIONS

71.   Plaintiffs bring their First Cause of Action as a collective action under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b) on behalf of all current and former employees who have worked for Defendants as bakery workers within the prior three years, or such earlier date as the Court may determine is equitable.

72.   The current and former employees described in the two preceding paragraphs above are situated similarly to Plaintiffs within the meaning of FLSA, 29 U.S.C. § 216(b) and, therefore, the First Cause of Action herein may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA.

73.   This action is also maintainable as a collective action pursuant to FLSA, 29 U.S.C. §216(b) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

current and former employees which would establish incompatible standards of conduct for Defendants.

74.   Plaintiffs bring their NYLL and ERISA claims on behalf of themselves and all other similarly situated individuals under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs bring these claims on behalf of all persons who worked for one or more of the Defendants as bakery workers at any time after December 22, 2011 to entry of judgment in this case (the "Class" and "Class Period" respectively), or such earlier date as the Court may determine is equitable.

75.   The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are approximately 125 members of the Class during the Class Period. There are questions of law and fact common to the Class which predominate over any questions affecting only individual members. The claims of the Individual Plaintiffs are typical of the claims of the Class. The Individual Plaintiffs will fairly and adequately protect the interests of the Class. A class action is superior to other available methods for the fair and efficient adjudication of the controversy -- particularly in the context of wage and hour litigation where individual employees lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

76.   Questions of law and fact common to the collective and class action as a whole include,

but are not limited to the following:

    a.  Whether each of the Defendants is an employer of the Class under the FLSA and/or the NYLL;

    b.  Whether Defendants unlawfully failed and continue to fail to pay minimum wage and overtime compensation in violation of FLSA;

    c.  Whether Defendants unlawfully failed and continue to fail to pay minimum wage, spread of hours, overtime compensation and accrued vacation pay upon separation in violation of NYLL;

    d.  Whether Defendants made unlawful deductions from wages in violation of FLSA and NYLL;

    e.  Whether Defendants breached their fiduciary duties with respect to handling of funds related to Plaintiffs' employer-sponsored group health insurance plan governed by ERISA; and

    f.  Whether Defendants' failure to pay lawful wages to the Class was willful.

77.    The names, last known addresses and cell phone numbers of the Class Plaintiffs are available from Defendants and notice should be provided to the Class both by first class mail to their last known address and by workplace posting, as well as by other practicable means, including but not limited to text messaging, as soon as possible.

## VI.    FIRST CAUSE OF ACTION

*Fair Labor Standards Act*

78.    Plaintiffs Fior Alberto, Monica Magana Baltazar, Alfonso Baltazar, Nolberto Gomez,
Lazaro Armas, Latecia Pachecho, Mamerto Rosales, and Martin Lopez (collectively "the
Named Plaintiffs") and any Class members who file individual consents to sue in this
action restate, re-allege and incorporate by reference all of the preceding allegations as if
fully set forth herein.

79.    Defendants willfully failed to pay Plaintiffs at least the applicable federal minimum wage
for each hour worked, in violation of 29 U.S.C. § 206(a)(1).

80.    Defendants willfully failed to pay Plaintiffs overtime compensation at rates not less than
one and one-half times the regular rate of pay for each hour worked in excess of forty
hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

81.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants,
jointly and severally, their unpaid minimum wage and overtime compensation, an
additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of
the action, pursuant to 29 U.S.C. § 216 (b).

## VII.    SECOND CAUSE OF ACTION

*New York Labor Law*

82.    The Named Plaintiffs on behalf of the Class restate, re-allege and incorporate by
reference all of the previous allegations as if fully set forth herein.

83.    Defendants willfully violated Plaintiffs' rights by failing to timely pay Plaintiffs at the
applicable minimum hourly wage, in violation of NYLL.

84.    Defendants willfully violated Plaintiffs' rights by failing to pay Plaintiffs overtime

compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, and an additional hour of pay for each hour worked in excess of ten in one day, in violation of the NYLL and its regulations.

85.     Defendants willfully failed to pay Plaintiffs for their accrued but unused vacation time upon separation from employment in violation of NYLL.

86.     Defendants willfully failed to provide Plaintiffs, at the time of hiring or any subsequent time, a wage notice in English or Spanish, the Plaintiffs' primary language, containing the information required by NYLL § 195(a) such as the rate of pay.

87.     Throughout the entire course of their employment, Defendants willfully failed to provide Plaintiffs accurate weekly wage stubs or statements containing all information required by NYLL § 195(3) such as dates of work, rate of pay for regular and overtime hours, and number of regular and overtime hours worked.

88.     Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, (a) their unpaid overtime compensation, their unpaid minimum wages, their unpaid accrued vacation time, damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 663(1); (b) $50 for each day Defendants failed to provide each Plaintiff with the required wage notice not to exceed a total of $5,000 for each violation; and (c) $250 for each workday Defendants failed to provide each Plaintiff with a wage statement, not to exceed a total of $5,000 for each violation, together with costs and reasonable attorneys' fees in accordance with NYLL § 198.

## VIII.  THIRD CAUSE OF ACTION

**Employee Retirement Income Security Act**

89.   Plaintiffs Fior Alberto, Alfonso Baltazar, and Monica Magana Baltazar on behalf of the
Class restate, re-allege and incorporate by reference all of the previous allegations as if
fully set forth herein.

90.   Plaintiffs Fior Alberto, Alfonso Baltazar, and Monica Magana Baltazar were participants
and beneficiaries in an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

91.   Defendants were employers of Plaintiffs Fior Alberto, Alfonso Baltazar, and Monica
Magana Baltazar as defined by 29 U.S.C. § 1002(5).

92.   Defendants were and continue to be the plan sponsor of Plaintiffs' employee welfare
benefit plan as defined by 29 U.S.C. § 1002(16)(b).

93.   Defendants were and continue to be fiduciaries of Plaintiffs' employee welfare benefit
plan within the meaning ERISA 29 U.S.C. § 1104(a) and thereby owed a standard of care
to Plaintiffs with respect to management of affairs related to said employee welfare
benefit plan.

94.   Defendants violated their fiduciary duties to Plaintiffs Fior Alberto, Alfonso Baltazar, and
Monica Magana Baltazar and the employee welfare benefit plan by failing to make
required contributions to said plan, failing to notify Plaintiffs Fior Alberto, Alfonso
Baltazar, and Monica Magana Baltazar of the cancelling of said plan due to Defendants'
non-payment and continuing to make deductions attributed to health insurance premiums
from Plaintiffs' pay checks.

95.   As a result of Defendants' breach of their fiduciary duties, Plaintiffs Fior Alberto, Alfonso
Baltazar, and Monica Magana Baltazar suffered a loss of health insurance, lack of access

to medical care and incurrence of bills for medical care.

96.    Due to Defendants' violations of ERISA, pursuant 29 U.S.C. 1132(a)(3), Plaintiffs are

entitled to appropriate equitable relief, including equitable restitution, disgorgement of

ill-gotten gains, and an injunction requiring Defendants to comply with all ERISA

obligations, as well as reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

97.    Certify this case as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and (3);

98.    Designate this action as a collective action on behalf of the Class pursuant to

FLSA § 216(b) and order prompt issuance of notice to all similarly situated

members of the Class apprising them of the pendency of this action and

permitting them to assert timely FLSA claims in this action by filing individual

Consent to Join forms pursuant to FLSA § 216(b) and toll the statute of

limitations on the claims of all "opt-in" Class Plaintiffs from the date of filing of

this Complaint until the Class has been provided with reasonable notice of the

pendency of this action and a fair opportunity to exercise their right to opt in as

plaintiffs;

99.    Designate Plaintiffs as representatives of the Class Plaintiffs;

100.   Declare Defendants' conduct complained of herein to be in violation of Plaintiffs'

and the Class's rights under the FLSA;

101.   Declare Defendants' conduct complained of herein to be in violation of Plaintiffs'

rights under NYLL;

102. Declare that Defendants' violations of the FLSA and NYLL were willful;

103. Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' rights and Defendants' obligations under ERISA;

104. Order Defendants to make Plaintiffs whole for the losses incurred through Defendants' violations of ERISA;

105. Enjoin Defendants to comply with all ERISA obligations;

106. Enjoin Defendants from transferring any remaining assets from their bakery business until such time as this Court has approved Defendants' compliance with their ERISA obligations;

107. Order Defendants to pay to Plaintiffs and Class all minimum and overtime wages owed, consistent with the FLSA;

108. Order Defendants to pay to Plaintiffs and Class Plaintiffs all minimum, spread of hours, vacation and overtime wages owed, consistent with NYLL;

109. Order Defendants to pay to Plaintiffs and Class Plaintiffs the statutorily prescribed penalties for failure to provide Plaintiffs with notice required by NYLL;

110. Award Plaintiffs and Class Plaintiffs liquidated damages for all wages withheld in violation of FLSA;

111. Award Plaintiffs and Class Plaintiffs additional liquidated damages for all wages withheld in violation of NYLL;

112. Award the Individual Plaintiffs additional appropriate compensation as incentive payments for their particular participation in this litigation benefitting other workers;

113. Award Plaintiffs reasonable attorneys' fees, costs and interest; and

114.    Award Plaintiffs such other legal and equitable relief as the Court deems

appropriate.

## IX.  REQUEST FOR TRIAL BY JURY

Plaintiffs respectfully request a trial by jury as to all claims to which they are entitled.

RESPECTFULLY SUBMITTED,

/s/ Robert McCreanor

MAUREEN HUSSAIN, Esq.
ROBERT MCCREANOR, Esq.
Hudson Valley Justice Center
30 South Broadway
Yonkers, NY 10701
(914) 308-3490
mhussain@hvjc.org
rmccreanor@hvjc.org

**ATTORNEYS FOR THE PLAINTIFFS**

Dated: December 22, 2017